1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    FRANCISCO C. BRISENO,                    Case No.  1:21-cv-00720-HBK

12              Plaintiff,                     ORDER DENYING PLAINTIFF'S MOTION
                                               FOR SUMMARY JUDGMENT, GRANTING
13         v.                                  DEFENDANT'S CROSS MOTION FOR
                                               SUMMARY JUDGMENT, AND AFFIRMING
14    MARTIN O'MALLEY,                         THE DECISION OF THE COMMISSIONER
      COMMISSIONER OF SOCIAL                   OF SOCIAL SECURITY [2]
15    SECURITY,[1]
                                               (Doc. Nos.  15, 20)
16              Defendant.

17

18

19         Francisco C. Briseno ("Plaintiff") seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

21   disability insurance benefits under the Social Security Act.  (Doc. No. 1).  The matter is currently

22   before the Court on the parties' briefs, which were submitted without oral argument.  (Doc. Nos.

23   15, 20-21).  For the reasons set forth more fully below, the Court denies Plaintiff's motion for

24   summary judgment, grants Defendant's cross motion for summary judgment, and affirms the

25

26   [1] The Court has substituted Martin O'Malley, who has been appointed the Acting Commissioner of Social
     Security, as the Defendant in this suit.  *See* Fed. R. Civ. P. 25(d).
27   [2] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C.
     §636(c)(1).  (Doc. No. 9).
28

Commissioner's decision.

## I.      JURISDICTION

Plaintiff protectively filed for disability insurance benefits on August 21, 2018, alleging an onset date of May 30, 2017.  (AR 262-68).  Benefits were denied initially (AR 119-33, 155-59), and upon reconsideration (AR 135-53, 161-66).  Plaintiff appeared before an Administrative Law Judge ("ALJ") on May 12, 2020, and at a subsequent telephonic hearing on September 15, 2020.  (AR 45-118).  Plaintiff was represented by counsel, and testified at the hearings.  (*Id*.).  On November 4, 2020, the ALJ issued an unfavorable decision (AR 7-35), and on March 9, 2021 the Appeals Council denied review (AR 1-6).  The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## II.      BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 43 years old at the time of the first hearing.  (*See* AR 328).  He completed two years of college and has specialized training in information technology.  (AR 282).  He lives with his wife and three children.  (*See* AR 51-52).  Plaintiff has work history as an information systems operator/analyst, and help desk and information technology support.  (AR 63-70, 109-10).  Plaintiff testified that she was unable to work during the relevant period because of chronic back pain and "nerve damage."  (AR 47).  At the first hearing, Plaintiff testified he is unable to work because of "issues" with his back and hips, sciatic nerve issues in both legs, difficulty grabbing things, facial pain, inability to walk more than half a block because of shortness of breath and pain in his hips and legs, and limping.  (AR 95-96, 98).  At his second hearing, Plaintiff testified he can walk half of an hour to an hour.  (AR 53).  Plaintiff reported he has to constantly change positions from standing, laying down, and sitting every 20-30 minutes, and he is in constant pain.  (AR 53, 96-97).  At the second hearing, Plaintiff testified that he has migraines every day that "come and go" and last 10 to 15 minutes at a time.  (AR 55-56).  He is depressed, has anxiety attacks every day, has difficulty sleeping, and has sleep apnea.  (AR 50,

57, 102-04).  Plaintiff testified that he was never psychiatrically hospitalized.  (AR 62).  Plaintiff reported that he stopped using methamphetamine one and a half years "or so" before the first hearing.  (AR 105-06).  He testified that he could not maintain a regular work schedule and would miss several days or fall asleep at work because of weakness and drowsiness.  (AR 108).

Medical expert, Dr. Steven Golub, testified at the second hearing that Plaintiff experienced a myocardial infarction, "however, in the face of normal coronary arteries, it was specific to the use of methamphetamines"; his ejection fraction was up to 55% "which is normal"; he has mild degenerative arthritis of the right knee; and degenerative disease of the lumbar spine. (AR 59-60).  Dr. Golub testified that there was no MRI of the lumbar spine, and "the x-rays really are not very significant."  (AR 60).  Dr. Golub concluded that an appropriate set of restrictions for someone with Plaintiff's medical record would be lift and carry 10 pounds frequently and 20 pounds occasionally; sit for six to seven hours in an 8-hour day; stand and walk for six hours in an 8-hour day; occasionally climb ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; and no exposure to unprotected heights, extremes in temperature, or exposure to vibration.  (AR 61).

### III.     STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

1    to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

2    2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

3    harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

4    nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's

5    decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556

6    U.S. 396, 409-10 (2009).

## IV.    FIVE-STEP SEQUENTIAL EVALUATION PROCESS

8         A claimant must satisfy two conditions to be considered "disabled" within the meaning of

9    the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

10   activity by reason of any medically determinable physical or mental impairment which can be

11   expected to result in death or which has lasted or can be expected to last for a continuous period

12   of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment

13   must be "of such severity that he is not only unable to do his previous work[,] but cannot,

14   considering his age, education, and work experience, engage in any other kind of substantial

15   gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

16        The Commissioner has established a five-step sequential analysis to determine whether a

17   claimant satisfies the above criteria.  See 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the

18   Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the

19   claimant is engaged in "substantial gainful activity," the Commissioner must find that the

20   claimant is not disabled.  20 C.F.R. § 404.1520(b).

21        If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

22   two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

23   C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of

24   impairments which significantly limits [his or her] physical or mental ability to do basic work

25   activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's

26   impairment does not satisfy this severity threshold, however, the Commissioner must find that the

27   claimant is not disabled.  20 C.F.R. § 404.1520(c).

28        At step three, the Commissioner compares the claimant's impairment to severe

4

impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

1

## V.   ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 30, 2017, the alleged onset date.  (AR 13).  At step two, the ALJ found that Plaintiff has the following severe impairments: morbid obesity; cardiomyopathy and coronary artery disease attributed to a history of methamphetamine abuse; hypertension; lumbar degenerative disc disease; mild arthritis of the right knee; obstructive sleep apnea; small fiber neuropathy; anxiety; and depression.  (AR 13).  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  (AR 14).  The ALJ then found that Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except he is able to climb ramps and stairs occasionally; he cannot climb ropes, ladders, or scaffolds.  His balance is unlimited; he is able to stoop, kneel, crouch and crawl occasionally.  He must avoid concentrated exposure to extremes of heat and cold.  He must avoid concentrated exposure to vibration.  He must avoid concentrated exposure to workplace hazards, such as unprotected heights and dangerous moving mechanical parts.  The claimant cannot perform work with a fast production pace or in which the production requirements vary significantly from day to day; and, he requires a workplace with no more than occasional changes to the setting and routine.

(AR 16-17).  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  (AR 28).  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cashier II, cafeteria attendant, and sales attendant.  (AR 28-29).  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from May 30, 2017, through the date of the decision.  (AR 29).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act.  (Doc. No. 1).  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence;

2. Whether the ALJ properly considered Plaintiff's symptom claims;

3. Whether the ALJ properly rejected the lay witness testimony; and

1      4.  Whether the ALJ erred at step five.

2 (Doc. No. 15 at 7-17).

3 **VII.    DISCUSSION**

4 **A.  Medical Opinions**

5        For claims filed on or after March 27, 2017, new regulations apply that change the

6 framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules*

7 *Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18,

8 2017); 20 C.F.R. § 404.1520c.  The new regulations provide that the ALJ will no longer "give

9 any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules*, 2017 WL

10 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a).  Instead, an ALJ must

11 consider and evaluate the persuasiveness of all medical opinions or prior administrative medical

12 findings from medical sources.  20 C.F.R. § 404.1520c(a) and (b).  The factors for evaluating the

13 persuasiveness of medical opinions and prior administrative medical findings include

14 supportability, consistency, relationship with the claimant (including length of the treatment,

15 frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of

16 an examination), specialization, and "other factors that tend to support or contradict a medical

17 opinion or prior administrative medical finding" (including, but not limited to, "evidence showing

18 a medical source has familiarity with the other evidence in the claim or an understanding of our

19 disability program's policies and evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-(5).

20        Supportability and consistency are the most important factors, and therefore the ALJ is

21 required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).

22 Supportability and consistency are explained in the regulations:

23
24
25        (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

26
27
28        (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

7

20 C.F.R. § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 404.1520c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence.  *Id.* at 792.  This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings."  *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

**1.  Charles DeBattista, M.D.**

In October 2018, Dr. Charles DeBattista conducted a psychiatric consultative evaluation of Plaintiff and opined that Plaintiff is able to understand, remember, and carry out simple one or two-step job instructions; is not able to do detailed and complex instructions; his ability to relate and interact with coworkers and the public is mildly to moderately impaired; his ability to maintain concentration and attention, persistence and pace is moderately impaired; his ability to associate with day-to-day work activity, including attendance and safety is mildly to moderately impaired; his ability to accept instructions from supervisors is not impaired; his ability to maintain regular attendance in the work place and perform work activities on a consistent basis is not impaired; his ability to work a full day or week is not impaired; his ability to perform work activities without special or additional supervision is not impaired; and he is capable of handling his own funds.  (AR 495).  Dr. DeBattista also opined that Plaintiff's prognosis is good and his condition would be expected to improve in 6-12 months with active treatment.  (*Id.*).

The ALJ found Dr. DeBattista's opinion was "partially persuasive" because "overall it is inconsistent with and unsupported by [] evidence in the record." (AR 26). In particular, the ALJ found the opined limits in social functioning were inconsistent with evidence in the record that Plaintiff regularly spent time with his family, went shopping, attended church and sporting events, helped his young children with their online schooling, spent time with others online, and was engaged, interactive, cooperative, pleasant, alert, and oriented during treatment visits. (AR 26). And the ALJ found the opined limits in concentration, attention, persistence, and pace were inconsistent with Plaintiff's ability to complete detailed forms, provide a reliable history, manage his appointments and his money, prepare meals, and help his children with online learning. (*Id.*). Finally, the ALJ cited Dr. DeBattista's psychiatric examination notes that Plaintiff drove himself to the appointment, appeared anxious and was sweating profusely, had normal posture and gait, made good eye contact, had a depressed and anxious mood, denied suicidal ideation, had normal speech, and was alert and oriented. (AR 27, 494-95).

Plaintiff argues, without citation to legal authority, that the ability to interact with medical providers or family at home is not equivalent to an ability to sustain interaction that would be required in a full-time setting, and similarly, the activities cited by the ALJ are not equivalent to an ability to sustain attention or concentration for the duration of a workday or work week. (Doc. No. 15 at 8). An ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning. *See Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 601-02 (1999); *see also Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). Plaintiff does not cite to, nor can the Court discern, legal authority suggesting that, when considering the consistency of a medical opinion under the new regulations, the ALJ is limited to considering only activities equivalent to those required in a full-time work setting. Moreover, the ALJ noted that treatment providers throughout the record found Plaintiff engaged, interactive, pleasant, cooperative, alert, oriented, and able to provide a reliable history; and, as noted by Defendant, the ALJ outlined Dr. DeBattista's own mental status examination findings that Plaintiff had anxious and depressed mood, but made good eye contact, had normal speech, had normal posture and gait, denied suicidal ideation, and was alert and oriented. (AR 26-27, 447, 452, 456, 461, 466, 470, 476, 484,

489, 494-95, 526, 683, 703, 817 (noting clear speech and good eye contact), 907, 919, 925

(noting normal attention span and concentration, and appropriate mood and affect), 947 (noting

Plaintiff was engaged, insightful, and receptive in session), 949, 953, 963, 965, 970 (noting

Plaintiff remained engaged with substantial attention), 1020, 1028, 1036-37, 1046, 1061, 1069).

Thus, when viewing the record as a whole, it was reasonable for the ALJ to conclude that

the limitations on Plaintiff's ability to relate and interact with coworkers and the public, and

limitations on "attention and concentration, persistence and pace," as opined by Dr. DeBattista

were inconsistent and unsupported by evidence in the record.  *Burch v. Barnhart*, 400 F.3d 676,

679 (9th Cir. 2005) ("Where the evidence is susceptible to more than one rational interpretation, it

is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.

1989) (ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in

testimony).  Finally, as noted by the ALJ, Dr. DeBattista specifically opined that Plaintiff's

condition was likely to improve in the next 6 to 12 months with treatment.  To be found disabled,

a claimant must be unable to engage in any substantial gainful activity due to an impairment

which "can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also Chaudhry v.

Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).   For all these reasons, the ALJ's finding that Dr.

DeBattista's opinion was only "partially persuasive" is supported by substantial evidence.

### 2.  Satish K. Sharma, M.D.

In March 2020, Dr. Satish K. Sharma conducted an "internal medicine evaluation" of

Plaintiff and opined that he could push, pull, lift and carry 20 pounds occasionally and 10 pounds

frequently; walk and/or stand for a half hour each at one time and a total of 2 hours cumulatively

in an 8-hour workday with appropriate breaks; sit for a half hour each at one time and a total of 6

hours cumulatively in an 8-hour workday with appropriate breaks; bend and kneel occasionally;

had no limits to the use of hands for fine and gross manipulative movements; and did not need an

assistive device.  (AR 996).  The ALJ found the assessed limitations regarding Plaintiff's ability

to lift and carry and sit is consistent with, and supported by, evidence in the record including

"images of [Plaintiff's] lumbar spine, right knee, cardiac testing, objective examination findings,

treatment needs, and evidence of [Plaintiff's] activities." (AR 23). However, the ALJ found Dr. Sharma's opinion regarding Plaintiff's ability to stand and/or walk and climb ladders, ropes, and scaffolds, as well as the absence of environmental limitations as inconsistent overall with the evidence. (*Id.*).

As an initial matter, Plaintiff argues the ALJ failed to include the "need to change positions every 30 minutes" in the hypothetical propounded to the vocational expert. (Doc. No. 15 at 9); *see Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("an ALJ is not free to disregard properly supported limitations"). In support of this argument, Plaintiff cites Social Security Regulation ("SSR") 83-12, which provides guidance on how a need to alternate sitting and standing affects the ability to perform sedentary or light work. SSR 83-12, *available at* 1983 WL 31253. As an initial matter, a plain reading of Dr. Sharma's opinion does not indicate that she explicitly found Plaintiff needed to alternate positions between sitting and standing every 30 minutes. Rather, in her narrative functional assessment, Dr. Sharma opined that Plaintiff could walk or stand 2 hours cumulatively in an 8-hour workday with appropriate breaks, and in the attached medical statement, as noted by the ALJ, Dr. Sharma further opined that Plaintiff could sit, stand, and walk, respectively, for 30 minutes at one time.[3] (AR 996, 999); *see* SSR 83-10, available at 1983 WL 31251, at *5-6 (a full range of light work requires "standing or walking, *off and on*, for a total of approximately 6 hours out of an 8-hour workday. Sitting may occur intermittently during the remaining time."). Regardless, Plaintiff's argument is inapposite because the ALJ properly rejected the entirety of Dr. Sharma's opinion as to Plaintiff's ability to stand and/or walk, along with additional opined limitations, because it was inconsistent with the overall treatment record, including evidence of improvement with conservative and routine treatment, and Plaintiff's activities. (AR 23). The ALJ also noted that Dr. Sharma stated there was no

---

[3] While the ALJ accepted Dr. Sharma's check the box limitations on sitting/standing/walking as opining that Plaintiff could sit, stand, and walk for 30 minutes "each at one time" for a cumulative total of 6 hours sitting and 2 hours walking and standing, the Court notes that Dr. Sharma arguably misunderstood the instructions in the applicable section of the form to "please check how many hours the individual can" sit/stand/walk without interruption and "if less than one hour, how many minutes without interruption." (AR 999). Dr. Sharma both checked the box for the number of hours, and entered a number of minutes. Regardless, it is for the ALJ to resolve conflicts and ambiguities in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

1  information available for her to review "except the allegations."  (AR 23).

2          First, as noted in Dr. Sharma's opinion, Plaintiff reported he "has had physical therapy,

3  epidural steroid injections, and radiofrequency ablation, but the back pain has been persistent."

4  (AR 993).  Plaintiff generally argues the ALJ "has improperly characterized Plaintiff's treatment

5  as conservative and has improperly found these treatments improved Plaintiff's symptoms when

6  the record shows that they did not."  (Doc. No. 15 at 10).  Plaintiff is correct that the Ninth Circuit

7  has rejected an ALJ's similar rationale for rejecting a claimant's testimony, noting that the

8  epidural steroid injections and physical therapy the claimant had for her back impairment had not

9  alleviated her symptoms.  The Ninth Circuit then noted in footnote 20 that "[i]n any event, we

10  doubt that epidural shots to the neck and lower back qualify as 'conservative treatment.'"  (Doc.

11  No. 15 at 10 (citing *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014)); *but see Martin v.*

12  *Colvin*, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017) ("the fact that Plaintiff has been

13  prescribed narcotic medication or received injections [for back and knee pain] does not negate the

14  reasonableness of the ALJ's finding that Plaintiff's treatment a whole was conservative,

15  particularly when undertaken in addition to other, less invasive treatment methods.").  However,

16  even assuming, *arguendo*, that the ALJ erred in discounting Plaintiff's symptom claims based on

17  improvement with conservative treatment for back pain, the ALJ additionally found that

18  Plaintiff's cardiovascular functioning improved with routine treatment such as medication and

19  lifestyle changes (AR 526, 542, 552, 562, 596, 658 (blood pressure and heart rate are well

20  controlled on medication), 667, 673, 884, 907, 913, 938, 943); and, as discussed below, any error

21  is harmless because the ALJ's ultimate finding that a portion of Dr.  Sharma's opinion was not

22  entirely persuasive was supported by substantial evidence.  See *Carmickle v. Comm'r of Soc.*

23  *Sec.,* 533 F.3d 1155, 1162-63 (9th Cir. 2008) (error in considering one of several reasons given in

24  support of ALJ's finding was harmless because the remaining reasons and ultimate determination

25  were supported by substantial evidence); *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055

26  (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's

27  ultimate disability conclusion).

28          Specifically, the ALJ found Dr. Sharma's limitation on Plaintiff's ability to stand and/or

1  walk was inconsistent with his ability to attend church, drive, attend youth sporting events,

2  perform light household chores, prepare meals, and care for his children.  (AR 23, 294, 299-300,

3  312-15, 321-23, 494 (noting helps out with children, makes a "fair number" of meals)).  As

4  above, an ALJ may discount a medical opinion that is inconsistent with a claimant's reported

5  functioning.  *See Morgan*, 169 F.3d at 601-02; *see also Ford*, 950 F.3d at 1155.  Plaintiff argues,

6  without citation to the record, that the "activities of daily living listed by the ALJ do not involve

7  standing or walking in excess of what Dr. Sharma opined Plaintiff could do."  (Doc. No. 15 at

8  10).  However, regardless of evidence that could be considered more favorable to Plaintiff, it was

9  reasonable for the ALJ to find the activities reported by Plaintiff during the adjudicatory period

10  were inconsistent with the severity of the limitations opined by Dr. Sharma as to Plaintiff's ability

11  to stand and walk.  *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for

12  discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating

13  impairment); *see also Tommasetti*, 533 F.3d at 1040 (ALJ may draw inferences logically flowing

14  from evidence); *Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one

15  interpretation, the ALJ's conclusion must be upheld).

16        Finally, the ALJ noted that Dr. Sharma had "no information available in the records

17  except the allegations" (AR 993), and the ALJ found Dr. Sharma's opinion as to Plaintiff's ability

18  to stand and/or walk was inconsistent with "unremarkable" musculoskeletal, neurological, and

19  cardiovascular examinations findings across the longitudinal record.  (AR 23).  Plaintiff failed to

20  identify or challenge these findings in his opening brief; thus, he has waived his opportunity to

21  raise these issues.  *Carmickle*, 533 F.3d at 1161 n.2 (court may decline to consider issues not

22  raised with specificity in plaintiff's opening brief); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th

23  Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in

24  the party's opening brief).  Regardless, as noted in the ALJ's decision, the record included

25  clinical and objective findings of ejection fraction greater than 55%; normal coronary arteries;

26  normal left ventricular function and filling; stable blood pressure; 2019 imaging showing stable

27  degenerative changes of the lumbar spine and osteoarthritis in the right knee; normal respiratory

28  examination findings; normal cardiovascular examination findings; normal neurological

examination findings; normal gait; normal station and stability; lumbar and knee joint tenderness; and reduced lumbar range of motion.  (AR 20-23, 424, 452, 466, 470, 476 ("respiratory effort unremarkable"), 526 (denying cardiovascular and musculoskeletal symptoms), 542, 552 (no edema), 596, 606, 609, 611-12, 642 (improved lower extremity mobility), 650 (reduced lumbar range of motion and motor strength), 666, 671-73, 703 (normal range of motion, negative straight leg testing), 714, 716, 723-24, 775-76, 780 (no assistive device for ambulation, abnormal lumbar range of motion, tenderness to palpation), 786-87, 798 (positive straight leg test on left), 802, 813, 824, 830 (reporting improvement after injection), 865, 877, 884 (normal gait, station, mobility), 891-92 (normal blood pressure), 899, 907 (normal cardiovascular, respiratory, musculoskeletal findings), 913, 919, 938, 943 (normal station and stability), 1028, 1081 (normal hip x-ray).  Based on the foregoing, it was reasonable for the ALJ to conclude that the severity of stand and/or walk limitations and the limitations as to Plaintiff's ability to climb ladders, ropes, and scaffolds assessed by Dr. Sharma was not consistent with examination findings across the longitudinal record.  *Burch*, 400 F.3d at 679.

For all of these reasons, after viewing the ALJ's reasoning in light of the record as a whole, the ALJ's finding that Dr. Sharma's opinion was "not entirely persuasive" is supported by substantial evidence.

**3. Silvia Diego, M.D.**

In May 2020, Dr. Silvia Diego, Plaintiff's treating physician, opined that Plaintiff cannot walk even half a block; can sit, stand, and walk for 15 minutes at one time; can sit, stand, and walk, respectively, for less than 2 hours in an 8-hour working day; he would need to take unscheduled breaks during a working day and would need to lie down during that time; he can never lift and carry any amount of weight, twist, stoop, crouch/squat, climb ladders, or climb stairs; he is limited in using his upper extremities for grasping, fine manipulations, turning and twisting objects, and reaching.  (AR 987-88).  Dr. Diego also opined that, on average, Plaintiff would be off-task 25% or more of a typical workday interfering with attention and concentration needed to perform even simple work tasks; and he would be likely to be absent three days per week and 4 days per month on average.  (AR 988-89).  As to his mental health limitations, Dr.

14

1   Diego also opined that Plaintiff had "poor" ability to follow work rules, relate to co-workers, deal

2   with public, use judgment, interact with supervisors, and deal with work stress; and Plaintiff had

3   no ability to function independently or maintain attention/concentration.  (AR 989).  In

4   documents attached to the opinion, Dr. Diego further opined that he experienced fatigue and

5   chronic pain; would need to continuously shift positions at will from sitting, standing, and

6   walking; congestive heart failure kept him from walking "at a speed needed to maintain a job";

7   chronic pain kept him from standing and sitting for long periods of time; and he would need to

8   use an assistive walking device in order to successfully engage in a job.  (AR 990-91).  Dr. Diego

9   concluded that Plaintiff is unable to successfully maintain employment.  (AR 991).  The ALJ

10   found Dr. Diego's opinion was "not persuasive."  (AR 25).

11      First, as to supportability, the ALJ found Dr. Diego's opinion was inconsistent with her

12   own treatment records.  *See Tommasetti*, 533 F.3d at 1041 (ALJ may properly reject a medical

13   opinion if it is inconsistent with the provider's own treatment notes).  The Court may decline to

14   address this issue as it was not raised with specificity in Plaintiff's briefing.  *See Carmickle*, 533

15   F.3d at 1161 n.2.  Regardless, the Court notes that the ALJ's decision cites Dr. Diego's own

16   physical examination findings of normal gait, normal station and stability, tenderness of the

17   lumbar spine and knee, normal neurological activity, and normal cardiovascular findings.  (AR

18   21, 25, 452, 466, 470, 476, 884, 892).  Moreover, as to consistency, the ALJ found Dr. Diego's

19   opinion was inconsistent with objective findings across the longitudinal record, improvement of

20   Plaintiff's lumbar, knee, and cardiac impairments with conservative treatment, and Plaintiff's

21   ability to engage in regular activities.  (AR 25).  Plaintiff generally argues that the ALJ

22   improperly found Dr. Diego's opinion less persuasive based on (1) improvement and "adequate

23   management" in Plaintiff's knee and lumbar symptoms with injections, medications, physical

24   therapy, and radiofrequency ablation treatment, and (2) Plaintiff's regular engagement in

25   activities throughout the record.  (Doc. No. 15 at 11).

26      As above, even assuming, *arguendo*, that the ALJ erred in discounting Plaintiff's

27   symptom claims based on improvement with conservative treatment for <u>back pain</u>, the ALJ

28   additionally found that Plaintiff's cardiovascular functioning and mental health symptoms were

treated routinely; and, as discussed below, any error is harmless because the ALJ's ultimate finding that a portion of Dr. Diego's opinion was not persuasive was supported by substantial evidence.  See *Carmickle,* 533 F.3d at 1162-63; *Stout*, 454 F.3d at 1055.  Namely, the ALJ found Dr. Diego's opinion is inconsistent with Plaintiff's ability to care for his children, help care for the family dog, shop, drive, attend church, attend youth sporting events, and attend appointments.  (AR 23, 294, 299-300, 312-15, 321-23, 494).  An ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning.  *See Morgan*, 169 F.3d at 601-02; *see also Ford*, 950 F.3d at 1155.  Plaintiff generally argues that the "activities of daily living listed by the ALJ are not actually inconsistent with the limitations Dr. Diego assessed." (Doc. No. 15 at 11).  However, the Court finds it was reasonable for the ALJ to find the activities reported by Plaintiff during the adjudicatory period were inconsistent with the severity of the limitations opined by Dr. Diego, including the inability to walk even half a block, the inability to sit, stand, or walk for more than 15 minutes at a time, and use a cane for ambulation.  *Molina*, 674 F.3d at 1113; *Burch*, 400 F.3d at 679.  Finally, as discussed in detail above, while not specifically challenged by Plaintiff, it was reasonable for the ALJ to find the severity of Dr. Diego's opined limitations was inconsistent with overall normal and unremarkable objective findings across the longitudinal record, including Dr. Diego's own examinations of Plaintiff.  (AR 20-23, 25, 424, 452, 466, 470, 476, 526, 542, 552, 596, 606, 609, 611-12, 642, 666, 671-73, 703, 714, 716, 723-24, 775-76, 780, 786-87, 798, 865, 877, 884, 891-92, 899, 907, 913, 919, 938, 943, 1028, 1081).

For all of these reasons, the Court finds the ALJ's finding that Dr. Diego's opinion was not persuasive is supported by substantial evidence.

**4. Sharin Keyes, LCSW**

In March 2020, Ms. Sharin Keyes, Plaintiff's treating clinical social worker, opined that Plaintiff had extreme limitations in his ability to maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; make simple work-related decisions; complete a normal work-day and work-week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; travel in

1   unfamiliar places or use public transportation; set realistic goals or make plans independently of

2   others; and tolerate normal levels of stress.  (AR 978-79).  Ms. Keyes opined that Plaintiff had

3   marked limitations in his ability to understand, remember and carry out very short and simple

4   instructions; understand, remember, and carry out detailed instructions; perform activities within

5   a schedule, maintain regular attendance, and be punctual within customary tolerances; work in

6   coordination with or proximity to others without being distracted by them; interact appropriately

7   with the general public, ask simple questions or request assistance; and be aware of normal

8   hazards and take appropriate precautions.  (*Id*.).  Ms. Keyes also opined that Plaintiff would

9   require a break every 30 minutes; would likely be absent as a result of the impairments or as a

10  result of necessary medical therapy more than 4 days per month; had 3 episodes of

11  decompensation within 12 months, each at least 2 weeks long; and had a complete inability to

12  function independently outside the area of one's home.  (AR 980).  Ms. Keyes concluded that

13  Plaintiff is unable to successfully maintain employment due to his impairments.  (AR 982).

14      The ALJ found Ms. Keyes' opinion was "not persuasive" because it is inconsistent with

15  the objective mental status examination findings, mental health treatment needs of the Plaintiff,

16  and evidence of Plaintiff's activities.  (AR 25-26).  The ALJ also noted the nature and extent of

17  Ms. Keyes' relationship with Plaintiff is vague in the opinion, as she noted that she first treated

18  Plaintiff in September 2019 and then lists the "last contact" as March 2019.  (AR 25); *see Woods*,

19  32 F.4th at 792 ("an ALJ can still consider the length and purpose of the treatment relationship,

20  [and] the frequency of examinations, . . . However, the ALJ no longer needs to make specific

21  findings regarding these relationship factors").  Plaintiff generally argues that the ALJ has not

22  shown Ms. Keyes' opinion is "inconsistent with or unsupported by the record"; his prescribed

23  medication causes additional fatigue and deficits in concentration; and "all of Plaintiff's treating

24  and examining providers have agreed that he has significant deficits in physical and mental

25  functioning despite extensive treatment for his pain and mental health conditions."  (Doc. No. 15

26  at 12).  However, Plaintiff fails to specifically contest the ALJ's findings regarding the treatment

27  relationship as reported in Ms. Keyes' opinion, nor does he challenge the ALJ's reasoning that the

28  extreme mental health limitations opined by Ms. Keyes, including a complete inability to function

17

independently outside the area of his home (AR 980), were inconsistent with Plaintiff's activities, the nature of his treatment, and the mental status examination findings. (*See* AR 25-26, 294, 299-300, 312-15, 321-23, 447, 452, 456, 461, 466, 470, 476, 484, 489, 494-95, 526, 683, 703, 817, 907, 919, 925, 947, 949, 953, 963, 965, 970, 1020, 1028, 1036-37, 1046, 1061, 1069). Most notably, Plaintiff does not identify or challenge the ALJ's findings that several of the limitations noted in the narrative attached to Ms. Keyes' opinion are not supported by any evidence in the record, including the assessment that claimant had three episodes of decompensation within a twelve month period, each lasting two weeks long. (AR 26). As properly noted by the ALJ, "[t]he only evidence of mental health treatment was outpatient and during these visits the claimant was described as engaged, insightful, receptive, functional, interactive, and/or engaged." (*Id*. (citing AR 947, 949, 953, 963, 965, 970)). Plaintiff also testified at the hearing that he has never been psychiatrically hospitalized. (AR 62-63). For all of these reasons, and regardless of evidence that could be considered more favorable to Plaintiff, including the opinions of other medical sources, it was reasonable for the ALJ to find the extreme limitations assessed by Ms. Keyes were not consistent with the objective medical evidence, Plaintiff's mental health treatment history, and Plaintiff's activities. *Burch*, 400 F.3d at 679.

After viewing the ALJ's reasoning in light of the record as a whole, the Court concludes that the ALJ's finding that Ms. Keyes' opinion was "not persuasive" is supported by substantial evidence.

**B. Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

1    Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the

2    ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ]

3    gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d

4    1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are

5    insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

6    undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

7    1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a

8    credibility determination with findings sufficiently specific to permit the court to conclude that

9    the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing

10   [evidence] standard is the most demanding required in Social Security cases." *Garrison v.*

11   *Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278

12   F.3d 920, 924 (9th Cir. 2002)).

13   Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

14   be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning

15   the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with

16   the medical evidence and other evidence in the record" for several reasons. (AR 19).

17   First, the ALJ found Plaintiff's symptoms and impairments have "improved with

18   medications, injections, physical therapy, use of sleeping aides and a CPAP, and implementation

19   of lifestyle changes." (AR 19). The effectiveness of medication and treatment is a relevant factor

20   in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3) (2011); *see*

21   *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively

22   controlled with medication are not disabling for purposes of determining eligibility for benefits)

23   (internal citations omitted); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to

24   treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

25   Moreover, evidence of "conservative treatment" may be sufficient to discount a claimant's

26   testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir.

27   2007); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ may properly rely on the fact

28   that only conservative treatment has been prescribed). Plaintiff argues, without citation to the

record, that his treating providers, specifically Dr. Sharma, noted his back pain did not improve

even after treatment with arguably non-conservative treatment including physical therapy,

epidural shot injections, and nerve ablation treatments; and the ALJ erred by failing to consider

Plaintiff's self-reported side effects from medications.  (Doc. No. 15 at 14; AR 993).  However, in

support of this finding, the ALJ cites evidence of improvement in the "unremarkable

musculoskeletal, neurological, and cardiovascular findings," cardiac testing that noted

improvement in Plaintiff's heart functioning with an ejection fraction of around 55%, and

Plaintiff's reports of improvement of his functioning during treatment visits.  (AR 19, 666, 672-

73 (blood pressure improved with medication, chest pain "unlikely due to coronary artery

disease"), 687, 703 (normal range of motion, gait, negative straight leg testing), 723-24 ("quality

of movement significantly improved), 735, 769, 877, 884, 892, 938, 943 (denies joint pain,

tenderness, difficulty walking), 1020).  Moreover, as discussed above, even were the Court to

assume the ALJ erred in discounting Plaintiff's symptom claims based on improvement with

conservative treatment for back pain, the ALJ additionally found that Plaintiff's mental health

treatment has remained conservative and his cardiovascular functioning improved with routine

care (AR 19-20); and, as discussed *supra*, the ALJ's ultimate rejection of Plaintiff's symptom

claims was supported by substantial evidence.  *See Carmickle*, 533 F.3d at 1162-63.

 Second, the ALJ found Plaintiff's statements are inconsistent because Plaintiff "engaged

in a somewhat normal level of daily activity and interaction," and his "ability to participate in

such activities undermines [his] allegations of disabling functional limitations."  (AR 19).  A

claimant need not be utterly incapacitated in order to be eligible for benefits.  *Fair*, 885 F.2d at

603; *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities .

. . does not in any way detract from her credibility as to her overall disability.").  Regardless, even

where daily activities "suggest some difficulty functioning, they may be grounds for discrediting

the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating

impairment."  *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012)(internal citations

omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a).  In support of this finding, the

ALJ cites evidence throughout the decision of Plaintiff's ability to perform a range of daily

1   activities, including run errands, mow the front lawn, fold and put away laundry, wash dishes,

2   drive a half hour, walk for a half hour to one hour, manage is personal care, shop, regularly spend

3   time with others (on the phone, in person, and online), attend church, travel to his mother's house,

4   prepare meals, care for others, attend youth sporting events, and manage and attend appointments.

5   (AR 19, 294 (noting "walking" and "grocery shopping as needed" as usual daily activities), 299-

6   300 (cannot lift over 30 pounds), 312-15, 321-23 (noting Plaintiff goes outside "often throughout

7   the entire day"), 494 (noting helps out with children, makes a "fair number" of meals)).

8           Plaintiff generally argues that while he "tries" to take care of his children and perform

9   household chores, he needs to change positions every 30 minutes and take breaks, has depression

10  and panic attacks, and his medications cause drowsiness and dizziness.  (Doc. No. 15 at 14).

11  However, regardless of evidence that could be considered favorable to Plaintiff, it was reasonable

12  for the ALJ to find that Plaintiff's documented activities, including his own reports in the record

13  that he takes care of the kids including taking them to school and attending sporting events, and

14  helping with shopping, cooking, and yard work, was inconsistent with his allegations of entirely

15  debilitating functional limitations.  *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be

16  grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally

17  debilitating impairment); *see also Tommasetti,* 533 F.3d at 1040 (ALJ may draw inferences

18  logically flowing from evidence); *Burch*, 400 F.3d at 679.

19          Third, the ALJ found Plaintiff's alleged mental and physical limitations are inconsistent

20  with the objective medical evidence.  (AR 20-21).  Medical evidence is a relevant factor in

21  determining the severity of a claimant's pain and its disabling effects.  *Rollins v. Massanari*, 261

22  F.3d 853, 857 (9th Cir. 2001) (an ALJ may not discredit a claimant's pain testimony and deny

23  benefits solely because the degree of pain is not supported by objective medical evidence).

24  Plaintiff generally argues, without citation to the record, that the ALJ fails to identify specific

25  aspects of Plaintiff's testimony that are inconsistent with specific portions of the medical record.

26  (Doc. No. 15 at 13-14 (citing *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015)).  However,

27  the ALJ's decision detailed medical evidence documenting normal and unremarkable objective

28  findings across the relevant adjudicatory period, in contradiction of Plaintiff's claims of disabling

21

1  limitations. (AR 20-21).

2      For example, as to his alleged cardiomyopathy, coronary artery disease, and hypertension,

3  the ALJ noted Plaintiff sought treatment for claimed symptoms of chest pain, shortness of breath,

4  and fatigue; however, after treatment with medication and changes in lifestyle, examination

5  findings were consistently normal and he had no swelling in his extremities.  (AR 20, 526, 542,

6  552, 596, 658, 667, 673, 884, 891-92, 899, 907, 913, 919, 938).  The ALJ acknowledged that

7  Plaintiff continued to complain of shortness of breath "with little to no exertion," however the

8  objective examination results regularly document unremarkable respiratory effort and normal

9  respiratory rate and pattern.  (AR 20, 526, 542, 552, 596, 675, 884, 891-92, 899, 907, 913, 919,

10  938).  Finally, the ALJ cited normal objective test results, including a 2019 transthoracic

11  echocardiogram that showed an ejection fraction greater than 55%, normal coronary arteries,

12  normal left ventricular function, and normal left ventricular filling.  (AR 20, 665-66, 671-72

13  (noting chest pain not due to coronary artery disease).

14      As to his alleged lumbar spine, right knee pain, and small fiber neuropathy, the ALJ noted

15  Plaintiff has undergone regular treatment including medication, injections, radiofrequency

16  ablation, and physical therapy, and musculoskeletal and neurological findings were normal

17  throughout the record aside from occasional notations of tenderness to the lumbar spine and knee,

18  decreased range of motion, positive straight leg testing, and abnormal gait.  (AR 21, 424, 452,

19  466, 470, 476, 526 (denying musculoskeletal symptoms), 552, 642 (improved lower extremity

20  mobility), 703 (normal range of motion, negative straight leg testing), 775-76, 780 (no assistive

21  device for ambulation, abnormal lumbar range of motion, tenderness to palpation), 786-87, 798,

22  802, 813, 824, 830, 865, 877, 884 (normal gait, station, mobility), 891-92, 899, 907, 913, 919,

23  938, 943, 1028, 1081 (normal hip x-ray)).  The ALJ also cited 2018 x-rays of Plaintiff's lumbar

24  spine revealing mild levocurvature and "significant" degenerative disease at L5-S1 and facet joint

25  degeneration most prominent at that level, with additional 2019 x-rays revealing stable

26  degenerative changes of the lumbar spine and osteoarthritis in his right knee. (AR 21).  Finally, as

27  to his mental health, the ALJ noted Plaintiff underwent mental health treatment in 2019, which

28  included medication and counseling, and "overall" the objective mental status findings were

1    unremarkable aside from observations that he was depressed and/or anxious.  (AR 21-22, 899,

2    907, 919, 925, 947-49, 963, 965, 970, 1020, 1046, 1054, 1062).

3         Overall, the ALJ explicitly recognized evidence in the record that could be considered

4    more favorable to Plaintiff and nonetheless found the severity of his symptom claims was

5    inconsistent with the weight of the objective medical evidence.  (*See* AR 18-21).  "[W]here

6    evidence is susceptible to more than one rational interpretation, it is the [Commissioner's]

7    conclusion that must be upheld."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  This

8    was a clear and convincing reason, supported by substantial evidence and largely unchallenged by

9    Plaintiff, for the ALJ to discount Plaintiff's symptom claims.

10        The Court concludes that the ALJ provided clear and convincing reasons, supported by

11   substantial evidence, for rejecting Plaintiff's symptom claims.

12        **C. Lay Witness Testimony**

13        Plaintiff's wife submitted a Third Party Function Report in September 2018 that, among

14   other things, reported that Plaintiff cannot lift, sit, stand, walk, or squat for long periods of time,

15   needs breaks to lie down or stretch, and pain triggers anxiety attacks.  (AR 320-32).  The ALJ

16   noted the lay witness testimony and found it was "overall consistent" with Plaintiff's statements,

17   including his ability to attend his children's sporting events, and cook, clean, shop, and attend

18   appointments with his wife.  (AR 18-19).  Plaintiff argues the ALJ improperly rejected her lay

19   witness testimony.  (Doc. No. 15 at 15-16).

20        As an initial matter, while not addressed by either party, the Court notes there is case law

21   suggesting that that an ALJ is not required to articulate reasons for discounting lay witness

22   statements under the revised regulations.  *See Fryer v. Kijakazi*, 2022 WL 17958630, at *3 n.1

23   (9th Cir. Dec. 27, 2022) ("It is an open question whether ALJs are still required to consider lay

24   witness evidence under the revised regulations, although it is clear they are no longer required to

25   articulate it in their decisions."); *Neri v. Comm'r of Soc. Sec.*, 2022 WL 16856160, at *7 (E.D.

26   Cal. Nov. 10, 2022) (finding that, under the revised regulations, an ALJ must consider, but not

27   necessarily articulate how the ALJ considered lay testimony).  Regardless, the Ninth Circuit has

28   continued to hold that where the ALJ gives clear and convincing reasons to reject a claimant's

1   testimony, and where a lay witness' testimony is similar to the claimant's subjective complaints,

2   the reasons given to reject the claimant's testimony are also sufficient to reject the lay witness

3   testimony.  *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009);

4   *Johnson v. Kijakazi*, 2022 WL 3998572, at *2 (finding ALJ's failure to address lay witness

5   testimony harmless where the lay witness statements were "largely duplicative" of plaintiff's

6   testimony).  Regardless of Plaintiff's general assertion that the ALJ failed to "note the quality and

7   duration of [] activities as described by the witness," the Court finds the lay witness statements

8   were consistent with Plaintiff's symptom claims.  (*See* AR 311-27).  As discussed above, the ALJ

9   provided clear and convincing reasons to reject Plaintiff's symptom claims; thus, the ALJ's

10  decision was likewise sufficient to discount the lay witness testimony.

11      **D. Step Five**

12      Last, Plaintiff argues the ALJ "omitted the limitations assessed by Plaintiff's treating and

13  examining doctors, Plaintiff's credible allegations, and the testimony of the lay witness"; and

14  therefore erred at step five by posing an incomplete hypothetical to the vocational expert. (Doc.

15  No. 15 at 16-17).  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, the

16  expert's testimony has no evidentiary value to support a finding that the claimant can perform

17  jobs in the national economy."  *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th

18  Cir.2009) (citation and quotation marks omitted).  However, as discussed in detail above, the

19  ALJ's consideration of the medical opinions, Plaintiff's symptom claims, and the lay witness

20  testimony, was supported by the record and free of legal error.  The hypothetical proposed to the

21  vocational expert contained the limitations reasonably identified by the ALJ and supported by

22  substantial evidence in the record.  As a result, the ALJ did not err at step five.

23      **VIII.   CONCLUSION**

24      A reviewing court should not substitute its assessment of the evidence for the ALJ's.

25  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment

26  as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail

27  above, the ALJ properly considered the medical opinion evidence, Plaintiff's symptom claims,

28  the lay witness testimony, and the findings at step five.  After review, the Court finds the ALJ's

decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 15) is DENIED.

2. Defendant's Cross Motion for Summary Judgment (Doc. No. 20) is GRANTED and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.

3. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.


Dated:    January 23, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

25